IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WEINGARTEN REALTY INVESTORS,
a Texas Real Estate Investment Trust,

      Plaintiff,

v.                                                                          CV 05-1060 WPL/KBM

FURNITURE WORLD, INC., a New Mexico
Corporation d/b/a VALLEY FURNITURE
WAREHOUSE,

      Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Weingarten Realty Investors sued Furniture World, Inc. for breach of a lease, and Furniture World filed several counterclaims against Weingarten. In previous orders, I dismissed all of the counterclaims except those for constructive eviction and interference with prospective contractual relations. (Doc. 26, 45.) Weingarten now moves for summary judgment on the remaining counterclaims and on its claim for breach of the lease. (Doc. 57.) For the reasons that follow, I will deny the motion as it pertains to the claims for constructive eviction and breach of lease and grant the motion as it pertains to the claim for interference with prospective contractual relations.

**THE SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact

exists, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing the motion for summary judgment. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Id.* If the moving party meets this initial burden, it then falls to the nonmoving party to identify specific facts that show the existence of a genuine issue of material fact. *Id.*

## THE SUMMARY JUDGMENT EVIDENCE

Furniture World leased space from Weingarten at the Wyoming Mall in Albuquerque, New Mexico. The term of the lease was seven years, commencing on March 1, 2001. On September 1, 2005, Furniture World abandoned the premises. (Doc. 26 at 1.)

Scott Mitchell, a principal shareholder and officer of Furniture World, wanted his store to be at the Mall, as opposed to having a stand-alone store, because he could benefit from other retailers' advertising and from foot traffic, resulting in "walk-in" customers. (Corder Dep. at 12, 21-22; Mitchell Dep. at 16, 29-30, 33-34, 56-58, 108; Mitchell Aff.) Miles Sanchez, who negotiated the lease for Weingarten, acknowledged that higher occupancy generally makes for a better shopping center and that having other tenants in a center can be a selling point when trying to lease space there. (Sanchez Dep. at 14, 40-41; Frakes Dep. at 39.) Mitchell claims that when they were negotiating the lease he told Sanchez that having a high occupancy rate at the Mall was important to him. He did not request a provision in the lease requiring Weingarten to maintain certain occupancy levels because he did not know that an express covenant was required "to make them keep the shopping center viable." (Mitchell Dep. at 70-72, 75-76.)

After Furniture World moved into the Mall, many tenants moved out of the Mall. (Mitchell

Dep. at 64, 93.) Tim Frakes, a vice-president of Weingarten, testified that Weingarten decided to redevelop the Mall because it was "basically obsolete, very hard to tenant or to re-lease, and [Weingarten was] having a hard time leasing it out." (Frakes Dep. at 3, 38.) Frakes was not aware of any Weingarten shopping centers that were more obsolete or outdated in the region for which he was responsible. That region encompassed Phoenix, Las Vegas, and Albuquerque. (Frakes Dep. at 36-37.)

Weingarten admits that "to maintain flexibility in exploring redevelopment possibilities," it elected not to renew leases of some tenants and entered into month-to-month leases with others. (Summ. J. Mot. at 2.) Weingarten believed that to redevelop the Mall it might need part or all of the space being leased by Furniture World. (Sanchez Dep. at 34-35.) Therefore, Weingarten and Furniture World negotiated a recapture agreement in January 2004. (Sanchez Dep. at 35; Mitchell Dep. at 106-07.) Under this agreement, Weingarten had the right to recapture the leased premises after June 2004 by paying Furniture World one-million dollars. (Summ. J. Resp. Ex. A.)

Weingarten entered into negotiations with Wal-Mart to locate at the Mall. After those negotiations began, Weingarten stopped signing long-term leases with new tenants. (Frakes Dep. at 71.) Weingarten also attempted to renegotiate the recapture agreement with Furniture World. (Sanchez Dep. at 37-38.) Sanchez testified that "when it became evident Wal-Mart was our only player . . ., we needed to try to consider other alternatives, in terms of our agreements, and one in particular was Valley Furniture." (Sanchez Dep. at 38.) According to Mitchell, Weingarten requested to modify the recapture agreement so that Weingarten would only have to pay $400,000 to recapture the premises. (Mitchell Aff.) Mitchell refused.

Weingarten and Wal-Mart eventually reached an agreement. (Sanchez Dep. at 23, 38; Frakes

Dep. at 71.) After the agreement was reached, Weingarten negotiated agreements with some of its tenants, allowing Weingarten to relocate their businesses to other areas in the Mall. (Sanchez Dep. at 32-33.) By the spring of 2006, the only tenants that Frakes could name that were on more than a sixty-day lease had either agreed to relocate within the Mall or were not going to be affected by the redevelopment. (Frakes Dep. at 31-33.) Although early versions of the Wal-Mart redevelopment would have spared Furniture World's space, the plan that Weingarten and Wal-Mart ultimately agreed to required that Furniture World's space be torn down. (Frakes Dep. at 77.) Weingarten never exercised its rights under the recapture agreement.

In May 2005, the State of New Mexico filed a complaint against Furniture World for unfair trade practices. (Summ. J. Mot. Ex. 4.) In defending against that suit, Mitchell filed an affidavit, stating that the suit received substantial attention in the news media and that Furniture World's business subsequently "dropped substantially." (Summ. J. Mot. Ex. 5.)[1]

Before abandoning the leased premises, Furniture World requested a reduction in rent and also requested an opportunity for mediation with Weingarten, but Weingarten refused. (Frakes Dep. at 25-26; Mitchell Aff.) Weingarten has assisted other tenants that were in financial difficulty by reducing rent or terminating the lease without penalty. (Frakes Dep. at 24.)

When asked whether "Weingarten would rather have Wal-Mart than Valley Furniture as a tenant," Sanchez responded, "Given that we're trying to redevelop the center, yeah, this is the path that Weingarten chose, yeah." (Sanchez Dep. at 24.)

---

[1] In July 2006, a state district court denied the State's request for an injunction, concluding that the State had failed to demonstrate a likelihood of success on the merits or that Furniture World engages in deceptive, misleading, or unfair sales practices as part of its regular course of doing business. (Summ. J. Resp. at 11, ¶ 55 & Ex. B; Summ. J. Reply App. A at 9, ¶ 55.)

**CONSTRUCTIVE EVICTION**

Constructive eviction occurs when the landlord's actions substantially deprive the tenant of the beneficial use of the leased premises and the tenant vacates, or when the landlord acts maliciously or in bad faith and the actions are so severe as to interfere with the tenant's peaceful enjoyment of the premises. *El Paso Natural Gas Co. v. Kysar Ins. Agency*, 645 P.2d 442, 444 (N.M. 1982); *Winrock Inn Co. v. Prudential Ins. Co.*, 928 P.2d 947, 955 (N.M. Ct. App. 1996); *see also Honce v. Vigil*, 1 F.3d 1085, 1091 (10th Cir. 1993). Acts that merely inconvenience the tenant do not constitute constructive eviction. *Winrock Inn.*, 928 P.2d at 955. The severity of the interference must be such that the premises become unfit for the purpose for which they were leased. *Id.* "Courts traditionally have accepted that a landlord's creation of adverse economic conditions may result in a breach of the covenant of quiet enjoyment." Eugene L. Grant, *Disturbing Concepts: Quiet Enjoyment and Constrictive Eviction in the Modern Commercial Lease*, 35 REAL PROP. PROB. & TR. J. 57, 83 (2000).

There are no New Mexico cases similar to this case, nor are there many similar cases from other jurisdictions. A Texas case, however, is similar. *See Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery & Tea Room*, 8 S.W.3d 18 (Tex. App.--Houston [14th Dist.] 1999).

In *Tea Cake*, a shopping center was purchased by HCA with the intention of converting the center to a hospital. Because HCA's plan required that the shopping center be demolished, HCA attempted to negotiate with the center's tenants to buy-out their leases. HCA was unable to reach a buy-out agreement with a bakery located at the center. HCA's architects eventually determined that it would not be necessary to demolish the center until after the bakery's lease expired. HCA accordingly informed the bakery that it could remain in the shopping center. Because the center was

virtually empty by that point, the bakery wanted to relocate, but was unable to reach an agreement with HCA. The bakery sued HCA for, among other things, constructive eviction. *Id.* at 19-20. The trial court granted HCA's motion for a directed verdict on this claim. *Id.* at 20. The appellate court reversed. The court held that the following evidence raised a fact issue: HCA wanted its tenants to vacate and was paying them to leave; the shopping center was vacant or almost vacant except for the bakery; and a significant portion of the bakery's business came from walk-in customers. *Id.* at 22.

In this case, it is undisputed that Weingarten decided to redevelop the Mall with Wal-Mart as an anchor tenant and that it needed Furniture World's space to implement the redevelopment. There is also evidence that the occupancy rate at the Mall decreased during the term of Furniture World's lease and that Weingarten began entering into short-term leases and relocation agreements with tenants as it pursued the Wal-Mart redevelopment. Moreover, if Weingarten had actually evicted Furniture World, it would have been required to pay Furniture World one-million dollars pursuant to the recapture agreement. Finally, there is evidence that Furniture World counted on walk-in customers generated by other businesses at the Mall.

Weingarten argues that the recapture agreement is irrelevant to the constructive eviction claim. It emphasizes that the agreement placed no duty on Weingarten to recapture the leased premises. This is true. But a jury could infer that Weingarten acted maliciously or in bad faith to obtain the premises without having to pay the money it would have been required to pay if it had exercised the recapture agreement.

Weingarten also relies on Exhibit A to the lease, which provides:

Any future construction by the Landlord within the Shopping Center will not affect the validity of the Lease covering the Leased Premises. Landlord may elect to change the location, size layout [sic] or other details of any buildings or Common Area in the

6

> Shopping Center and/or to construct other buildings in the Shopping Center and such changes will not affect the validity of the Lease covering the Leased Premises.

As I have already indicated in a prior order, this provision is irrelevant to the factual scenario presented here because it deals with construction at the Mall. (*See* Doc. 26 at 3 n.1.) There is no evidence that any construction occurred before Furniture World abandoned the premises.

Viewing the evidence in the light most favorable to Furniture World, I conclude that a fact issue exists as to whether Weingarten constructively evicted Furniture World from the Mall.

### INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

The tort of interference with prospective contractual relations requires either improper motive or improper means. *Los Alamos Nat'l Bank v. Martinez Surveying Servs.*, 139 P.3d 201, 206 (N.M. Ct. App. 2006). If the claimant relies on improper motive, an improper motive must be the sole motive for interfering with the prospective contract. It is not sufficient that an improper motive forms part of the basis of the act that interferes with prospective contractual relations. *Id.* If the claimant relies on improper means, the improper means must have been undertaken with the sole intention of harming the claimant. If there is at least in part a legitimate business reason for the act, then a claim based on improper means fails. *Id.* Improper means include both tortious and predatory behavior. "Predatory behavior" means "wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession." *Id.* at 207 (internal quotation marks and citation omitted). Examples of improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood. *Id.*

Furniture World argues that Weingarten interfered with its prospective contractual relations

7

by allowing the Mall's occupancy rate to decrease (as described in the discussion of constructive eviction), by making or failing to correct a disparaging remark about Furniture World, and by allowing the Mall to deteriorate.

It is undisputed that Weingarten wanted to redevelop the Mall. Accordingly, because there was at least in part a legitimate business reason for allowing the occupancy rate to decrease, that action cannot serve as a basis for the claim of interference with prospective contractual relations.

Furniture World's next basis for the interference claim is a statement made at the March 17, 2005 meeting of the Albuquerque Environmental Planning Commission (EPC). Approval of the Wal-Mart location at the Mall was one of the topics at that meeting. It is undisputed that Ron Bohannan stated at the meeting, "You had Valley Furniture which is closing all of its stores in town both east and westside that is leaving." (Summ J. Mot. at 7, ¶¶ 23, 24; Summ. J. Resp. at 11, ¶ 51.)

Furniture World asserts that when Bohannan made this statement, he was acting as an agent for both Wal-Mart and Weingarten. To refute this assertion, Weingarten has provided an affidavit by Bohannan. In the affidavit, Bohannan states that he is president of Tierra West, LLC; he had a contract to represent Wal-Mart in seeking site-plan approval for the proposed Wal-Mart at the Mall; all of his fees in connection with this endeavor were billed to and paid by Wal-Mart; his statement at the meeting was based on a Furniture World advertisement that led him to believe the stores were going out of business; the statement was not based on information from Weingarten; and Weingarten neither asked nor authorized him to make the statement. (Summ. J. Mot. Ex. 3.)

To counter Bohannan's affidavit, Furniture World relies on minutes from the EPC meeting. One of the pages of the minutes states, "TIERRA WEST LLC agents for WALMART STORES EAST, LP & WEINGARTEN REALTY INVESTORS request the above actions . . . ." (Summ. J.

8

Resp. Unlabeled Ex.) Furniture World seems to read this to mean that Tierra West was requesting the actions on behalf of both Weingarten and Wal-Mart.[2]

Furniture World has articulated no foundation for the admissibility of this evidence, and I have no duty at the summary judgment stage to consider all the hypothetical ways in which the evidence could be admissible. *IBP, Inc. v. Mercantile Bank of Topeka*, 6 F. Supp. 2d 1258, 1263-64 (D. Kan. 1998). The minutes are not proper summary judgment evidence because they contain no certification of correctness. *See* FED. R. EVID. 902(4), 1005; *Schartz v. Unified Sch. Dist. No. 512*, 963 F. Supp. 1067, 1070 (D. Kan. 1997) ("There is no provision in the Federal Rules of Civil Procedure . . . for simply attaching a document as an exhibit with no supporting affidavit, deposition testimony, or other relevant evidence authenticating the document."); *cf. Fisher v. Shamburg*, 624 F.2d 156, 162 n.7 (10th Cir.1980) ( "[I]t is proper to consider a certified transcript on a motion for summary judgment.").[3]

The minutes are also hearsay, at least to the extent that they are being used to establish that Tierra West was acting as Weingarten's agent. *See Erickson v. Farmland Indus.*, 271 F.3d 718, 728 (8th Cir. 2001). Therefore, I will not consider the minutes.

Even if Bohannan was not acting on behalf of Weingarten when he made the statement that

---

[2] Given the lack of punctuation, it could also mean that both Tierra West (representing only Wal-Mart) and Weingarten were requesting the actions.

[3] Furniture World labeled its exhibits with letters from "A" to "G." After that, the lettering stops, but the exhibits do not. The last seven pages of the exhibits begin with a title page stating, "Planning Meeting Thursday, April 21, 2005." The next two pages are labeled on the top left corners as "EPC MINUTES MARCH 17, 2005," pages 3 and 145. These pages contain the statements described above. The following pages appear to be transcriptions of an EPC hearing and have a different format from the minutes. The final page is a copy of a court reporter's certification that the "foregoing is a true and correct transcript of the proceeding had in the within titled and number cause on the date hereinbefore set forth." It appears that the two pages from March 17 have been inserted into the partial transcription of the April 21 hearing.

Furniture World was going out of business, Furniture World suggests that Weingarten's attorney was present at the EPC meeting and failed to correct Bohannan's statement. The attorney has filed an affidavit, denying that she was present at the March 17 meeting. (Summ. J. Reply Ex. A.) The partial transcription of the April 21 meeting states that Weingarten's attorney was present, but there is nothing in the two pages from the March 17 meeting to indicate that she was present on that date. Furniture World offers no other evidence to establish that the attorney was present on March 17. Thus, there is no genuine issue as to this fact. Furthermore, Furniture World has cited no authority for the proposition that an interference claim may be predicated on the failure to correct a third-party's misstatement.

Furniture World's final basis for the interference claim is that Weingarten allowed the Mall to deteriorate. To establish this fact, Furniture World relies in part on statements made by Bohannan at the April 21 EPC meeting. He said that there was not "any security" in the Mall area. He further stated:

> [T]he empty shopping center or the half-empty shopping center that exists there today could present a blighted and a nuisance situation. And I've heard from several people that live - elderly people that live in the apartments, the Three Fountain Apartments, who have actually either been attacked or know somebody who has been attacked just walking over to John Brooks. So - so the current situation today does create a blighted situation.

Assuming that the transcription from the April 21 meeting is itself admissible evidence, Bohannan's report about what he had "heard" is obviously hearsay. Moreover, Bohannan's description of the "empty . . . or half-empty shopping center" is immaterial because I have already concluded that Weingarten's actions that allowed the occupancy rate to decrease do not provide a proper basis for the interference claim. This leaves only Bohannan's statement that the Mall area did

not have "any security." Furniture World has presented nothing to suggest that Weingarten had an improper motive in failing to provide security or that the lack of security harmed its business.

Furniture World also relies on Mitchell's deposition testimony. Mitchell testified that local newspapers referred to the Mall as "derelict" and that Bohannan referred to the Mall as "[d]ilapidated" and "outdated." (Mitchell Dep. at 96.) This testimony is hearsay and therefore is not proper summary judgment evidence. *See Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 485 (10th Cir. 1995).

Viewing the proper summary judgment evidence in the light most favorable to Furniture World, I conclude that there is no genuine issue of material fact regarding Furniture World's interference claim.

## CONCLUSION

Summary judgment is granted on Furniture World's claim for interference with prospective contractual relations and denied on Furniture World's claim for constructive eviction. Because a genuine issue of material fact exists regarding constructive eviction, summary judgment is also denied on Weingarten's claim for breach of the lease.

IT IS SO ORDERED.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

11